THOMAS WHITESELL et ux.

*v.*

WILLIAM L. COLLISON et ux.

[Decided July 29th, 1922.]

Where the form of a farm lease uniformly used in a certain locality forbade the tenant to remove manure or compost, and it was the custom for the tenant to leave the manure when no agreement was specifically made, a tenant under a parol lease containing no specific stipulation as to manure was not entitled to take the manure although it exceeded in amount what manure he received when he went into possession.

On final hearing on bill for injunction.

*Messrs. Waddington & Mathews,* for the complainants.

*Mr. William A. W. Grier,* for the defendants.

LEAMING, V. C.

The single inquiry at this time is whether an outgoing tenant of farming lands, in the absence of a covenant to the contrary, may remove from the farm the manure made by him in the ordinary course of husbandry.

The rule which appears to have been almost universally adopted in this country is stated in *16 R. C. L. 754,* as follows:

"It is generally held that manure made on a farm, occupied by a tenant at will or for years, in the ordinary course of husbandry, consisting of collections from the stable and barnyard, or of composts formed by an admixture of these with the soil or other substances, is, by usage, practice and the general understanding, so attached to and connected with the realty that, in the absence of any express stipulation on the subject the tenant has no right to remove the manure thus collected, or sell it to be removed. In such a case, the manure is not regarded as a product of the land to which the tenant is exclusively entitled, but as ordure or compost resulting from the consumption or

decay of those products, required by the land to repair the waste to which it has been subjected in producing the crops consumed; and it is for that reason that the law holds the manure in such a case to be an accretion to the land which the tenant cannot remove."

The following cases are there collected in support of the text above quoted: *Haslem* v. *Lockwood, 37 Conn. 500; Brigham* v. *Overstreet, 128 Ga. 447; Munier* v. *Zachary, 138 Ia. 219; Chase* v. *Wingate, 68 Me. 204; Gallagher* v. *Shipley, 24 Md. 418; Fay* v. *Muzzey, 13 Gray* (*Mass.*) *53; Daniels* v. *Pond, 21 Pick.* (*Mass.*) *367; Nason* v. *Tobey, 182 Mass. 314; Pickering* v. *Moore, 67 N. H. 533; Lewis* v. *Jones, 17 Pa. St. 262.* The only authority to the contrary appears to be *Smithwick* v. *Ellison, 24 N. C. 326.* See, also, *11 R. C. L. 1080,* to the same effect as the text above quoted.

There appears to be no authority in this state in which this question has arisen between a landlord and his tenant. But in *Ruckman* v. *Outwater, 28 N. J. Law 581,* it is held that as between a grantor and grantee of a farm by a deed of conveyance without any clause of reservation, the title to the manure lying in and around the barnyard does not pass to the grantee; that manure lying in a barnyard, where it has accumulated, is personal property, but after it is spread upon the land, and appropriated to fertilizing purposes, it becomes a part of the freehold, and passes with it.

In the absence of any evidence tending to establish a common understanding or custom of the locality to the effect that manure accumulated in the ordinary course of husbandry should not be removed by a tenant, it may well be doubted whether, in view of the principles defined by our court of errors and appeals in the case above referred to, this court should be privileged to adopt the view stated in the text first above quoted.

It seems impossible, however, to wholly disregard the manifest differences that exist between the interests and relations of the parties to a contract of sale and a contract of letting for purposes of husbandry. In the former the vendor permanently parts with his interest in the land, and if the purchaser seeks to acquire the manure then existing in the form of per-

sonalty, he may be appropriately required to specifically and expressly make it the subject of his purchase; whereas in a tenancy the landlord and tenant are equally interested in the maintenance of a standard of good husbandry that will attain appropriate result and benefits to the tenant during the term and to the landlord thereafter. Good husbandry is well known to include the use of such fertilizers as may be necessary to insure good crops and maintain the land in a reasonable degree of fertility, and in uniform practice the manure that accumulates on the farm is utilized for that purpose. This, of course, does not include manure not made in the ordinary course of agriculture by a farm tenant, such as manure made at a livery stable or in any other manner not connected with agriculture. See *Daniels* v. *Pond, supra,* and *Nason* v. *Tobey, supra;* but the manure which accumulates in the ordinary course of agriculture appears to be uniformly regarded in the southern section of our state as necessary for use on the land to attain a fair and reasonable standard of cultivation, since to otherwise dispose of it is to require other equally effective fertilizers to take its place. It is indeed difficult to conceive a contract of farm-letting in which the tenant is to be privileged to leave the farm either impoverished or stripped of manure; and I strongly incline to the view that in the absence of specific stipulation touching manure a farm tenant in the southern portion of our state will be held to an implied engagement to leave on the farm at the end of his term all manure that has there accumulated in the ordinary course of agriculture, even though the amount at the end of term may exceed in quantity the amount on the farm at the beginning of the term; and that this implied engagement may be inferred without specific proof of a custom to that effect in that locality.

But it is here unnecessary to adopt that broad view. The evidence in this case fully justifies the conclusion that a custom of that nature exists in the locality of the farm here in question. In this case the letting was by parol, and no specific stipulation touching the manure to be left on the farm is disclosed to have been made. But there has been intro-

duced in evidence in this case a printed form of lease which is shown to be in uniform use in that locality when written leases are executed. This form of lease not only requires a tenant to farm the land "in a good farmer-like manner," but specifically forbids the tenant to remove manure or compost unless it be agreed upon to the contrary. The testimony also indicated that it is the custom in that locality for a tenant to leave the manure on the farm when no agreement touching the manure has been specifically made.

My conclusion in this case is that the manure, which is the subject of dispute herein, is the property of the owner of the farm, although it appears to somewhat exceed in amount the amount which the tenant received the benefits of when he went into possession.