# URBACH v. URBACH

(No. 2026; November 10, 1937; 73 Pac. (2d) 953)

For the defendant and appellant, there was a brief and the cause was argued orally by *J. M. Roushar* of Torrington.

For the respondent, there was a brief by *Everett Taylor* of Torrington, Wyoming, and *Glebe* and *Elliott* of Scottsbluff, Nebraska, and oral arguments by *Messrs. Taylor* and *Glebe*.

BLUME, Chief Justice.

This is an action brought by the plaintiff, a minor, seventeen years of age, against her husband, the defendant, nineteen years of age. Plaintiff alleges that she and her husband are living separate and apart; that there was born to plaintiff and defendant one child, Betty Jane Urbach (born in May, 1936), now living with plaintiff; that defendant has refused to support her or the child, although capable of earning a good living. Certain allegations were made for the purpose of showing a cause for divorce, and she prayed for that remedy, and also for the custody of the child, and its support by the defendant. J. M. Roushar was appointed as guardian ad litem for the defendant. He, thereupon, moved to strike the petition from the files on the ground that plaintiff, as minor, had no capacity to sue. Thereupon an application was made to substitute plaintiff, by George Fox, her next friend, as party plaintiff. This application was granted, and the motion of the defendant overruled.

Thereafter defendant filed a demurrer, made on the

same ground as the foregoing motion, and also an answer, admitting that plaintiff and defendant are married, but denying each and every other allegation in the petition. The demurrer was overruled. Plaintiff was refused a divorce, but the court retained the case for the purpose of disposing of the matters in connection with the child; found that defendant is its father, awarded its custody to the mother, and ordered defendant to pay ten dollars per month for its support, and directed the payment of twenty-five dollars as attorney fee. From this judgment the defendant has appealed.

1. It is argued on behalf of the defendant, appellant here, that the wife, being a minor, has no capacity to sue; that the court was without jurisdiction to entertain a suit brought by her, and that this defect could not be cured by thereafter appointing a next friend to prosecute the action on her behalf and by amending the petition accordingly. Defendant relies on Section 89-506, Rev. St. 1931, providing that "the action of an infant must be brought by its guardian or next friend; and when the action is brought by his next friend, the court may dismiss it, if it is not for the benefit of the infant, or substitute the guardian, or any person, as the next friend." Counsel argues that the statute is mandatory in its terms, and cannot be disregarded. The same contention has been made in a good many cases involving the same or a similar statute. Some of the cases have considered the question at length, and have ruled contrary to defendant's contention. Lorden v. Stapp, 21 Ariz. 646, 192 Pac. 246; Cahill's Estate, 74 Cal. 52, 15 Pac. 364; Trask v. Placers Co., 26 Ida. 290, 142 Pac. 1073; Greenman v. Cohee, 61 Ind. 201. The almost universal rule seems to be that while a suit by an infant in his own name is an irregularity, that may be cured by an amendment. 31 C. J. 1132. While the statute cited above reads as though it were mandatory, other sections of the stat-

ute cannot be disregarded in determining the point here considered. Section 89-1063 provides that pleadings may be amended in furtherance of justice. Section 89-1064 provides that "the court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not effect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect." In view of these statutes we do not think that we are called on to disagree with the general rule above stated, and the instant contention must, accordingly, be overruled.

2. Defendant's counsel further contends that when the court refused plaintiff a divorce, its authority ended, and that it could not thereafter make an order in regard to the custody and support of the child. Counsel for the plaintiff, on the other hand, maintain that this is an action in equity; that when in such case the court obtains jurisdiction, it will retain it for the purpose of avoiding more than one suit and that it will do justice between the parties in all matters incident to the suit. However, divorces in England were granted by ecclesiastical courts or by Parliament. We have no such courts here. And it seems to be generally recognized that the power to grant a divorce is not within the general jurisdiction of courts of equity, but that the jurisdiction in such cases is purely statutory. 19 C. J. 22, 24; Dewitt v. Dewitt, 67 O. S. 340; Marleau v. Marleau, 95 O. S. 162; West v. West, 100 O. S. 33; Stewart v. Stewart, 20 Ohio Nisi Prius N. S. 273. The great majority of the courts, accordingly, which have had occasion to pass on the question before us, have held that when the statute merely provides that the custody and care of a child may be provided for when a divorce is granted, the power cannot be enlarged by the courts and cannot be exercised in a case in which the divorce is denied. 19 C. J. 342; 9 R. C. L. 473;

Keppel v. Keppel, 92 Ga. 506, 17 S. E. 976; Black v. Black, 37 Ga. App. 352, 140 S. E. 384; Thomas v. Thomas, 250 Ill. 354, 95 N. E. 345, 35 L. R. A. N. S. 1158, Ann. Cas. 1912 B. 344; Porter v. Porter, 190 Ia. 1126; Oliver v. Oliver, 216 Ia. 57, 248 N. W. 233; Klenk v. Klenk, (Mo. App.) 282 S. W. 153; Walker v. Walker, 140 Miss. 340, 105 So. 753, 42 A. L. R. 1525; Weigel v. Weigel, 60 N. J. Eq. 331, 47 Atl. 183; Redding v. Redding, (N. J. Ch.) 85 Atl. 712; Davis v. Davis, 75 N. Y. 224; Simon v. Simon, 159 N. Y. 549, 54 N. E. 1094; Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937; Fein v. Fein, 261 N. Y. 441, 185 N. E. 693, and a number of cases from the inferior courts of New York; Lord v. Lord, 80 W. Va. 547, 87 S. E. 282; Towson v. Towson, 49 App. D. C. 45, 258 Fed. 517; Murray v. Murray, 134 Md. 653, 107 Atl. 550; In re Bettis, 28 Ohio N. P. N. S. 304; LeBaron v. LeBaron, 23 Ariz. 560, 205 Pac. 910, 913 (perhaps dictum). The same rule has been laid down in cases in which separate maintenance has been refused. Smith v. Smith, 214 Ill. App. 302; Dunlap v. Dunlap, (N. J. Ch.) 118 Atl. 277. The holding in other cases is based on a special reason. For instance, in Gatton v. Gatton, 41 Ohio App. 397, 179 N. E. 745, the holding is based on the fact that the Orphans' Court has exclusive jurisdiction over matters relating to minor children in the absence of a divorce proceeding. In King v. King, 42 Mo. App. 454, the trial court undertook to award the custody of children during the pendency of an appeal, and it was held that this could not be done. In Garrett v. Garrett, 114 Iowa 430, 87 N. W. 282, which is claimed to be very similar to the case at bar, the child involved was a boy about 17 years of age. The court did not hold that there was want of power in awarding the custody of the boy, but that under the circumstances the power was abused. A similar case is Robinette v. Robinette, 153 Va. 342, 149 S. E. 493.

The reason for denying the court power to make an order as to the children after refusal of a divorce is stated in Davis v. Davis, supra, as follows: "It would be anomalous in legal proceedings to allow a complainant, who has failed to establish a claim to the principal relief sought, to have a decree against the defendant for the mere incidents to that relief." And the West Virginia case, after referring to the foregoing statement in Davis v. Davis, added:

"To award the custody of the child to the husband under such circumstances would be inconsistent with the decision on the merits. It would tend to prevent reconciliation and resumption of cohabitation, favored and enforced by the law, as far as is reasonably practicable. To refuse a divorce, in obedience to this policy on the one hand, and take the child or children, constituting the strongest tie between the parties, from one of them in disregard thereof, on the other, and in the same breath, would be both inconsistent and destructive of declared policy. It would necessarily involve the extension of judicial aid in the maintenance of separation and establishment of cause for divorce."

It may be here noted that the legislature changed the rule in West Virginia after the decision last mentioned. Settle v. Settle, (W. Va.) 185 S. E. 859. And we may say further that the legislature of Maryland also changed the rule immediately after the decision in Murray v. Murray, supra. See Melson v. Melson, infra.

A number of states have a statute specifically providing, in substance, that when a divorce has been denied, the court may nevertheless, provide for the custody and support of the child, and sometimes also for the support of the wife. Under such statutes, of course, no question of the right to exercise the power can arise, and it has been so held. Cornelius v. Cornelius, 31 Ala. 479; Ex parte Cooper, 86 Kans. 573, 121 Pac. 334; Penn v. Penn, 168 Wisc. 267, 169 N. W. 558; Adams v. Adams, 178 Wisc. 522, 190 N. W. 359; Bar-

ker v. Barker, 105 Okl. 240, 232 Pac. 371; Melson v. Melson, 151 Md. 196, 134 Atl. 136. And see note Ann. Cas. 1912 B. 358; 5 Ann. Cas. 91-92, and Casilear v. Casilear, (Va.) 190 S. E. 314 as to the Virginia statute. Section 39 of Article 16, for instance, of the Maryland Code, provides that the court shall have power to provide for the custody and support of children whether the divorce be granted or denied. These statutes undoubtedly show the trend of modern thought, and seem to justify the statement of Schouler, Marriage, Divorce, etc., (6th Ed.) page 2030, when he says:

"The early decisions which held in accordance with the common law rule, that the court could not give the custody of the children to the mother and require the father to provide for their support, except as an incident to a decree of divorce or of separation, are not in harmony with the present state of the law."

At the same time we cannot, to uphold the decree herein, rely upon decisions under specific statutes such as we have pointed out, and they do not aid us a great deal in the solution of the problem before us, especially as to the order of custody of the child herein.

Section 35-117, Rev. St. 1931 provides that the court may make disposition of and provision for children, in "granting a divorce." Conceding that an action for divorce is not an equitable, but purely a statutory action, this section would not aid us here. But section 35-121 provides:

"When the husband and wife are living separately, or when they are living together, but the husband failing and neglecting to contribute to the support of the wife and children, or either, and no proceeding for divorce is pending the wife may in behalf of herself or minor children if any or either, institute a proceeding by petition setting forth fully her case and upon five days' notice to the husband, if he can be served personally with notice in the state, the judge may hear the same in term or vacation, and grant such order

concerning the support of the wife and children or either, as he might grant, were it based on a pending proceeding for divorce, to be enforced in the same manner, together with any remedy applicable in a court of equity, such as appointing a receiver and the like. * * *"

This statute does not provide for the custody of children. It merely provides for their support. It cannot, accordingly, be relied upon to sustain the whole of the decree. But it has been recognized for several centuries that, independent of any statute, the custody of minor children is one of the recognized subjects of which a court of equity will take cognizance in the proper case. That custody could be controlled by a proceeding in habeas corpus, when that proceeding was suitable, but that was not the exclusive method. The proceeding by habeas corpus was a proceeding at law. Equity had its own proceeding, and itself took cognizance of the custody of children. Madson v. Humane Society, 25 Wyo. 338, 169 Pac. 336; In re Spence, 22 Eng. Ch. 246; Queen v. Gyngall, 2 Q. B. (1893) 232; Story on Equity (14th Ed.), Sec. 1752; Pomeroy on Equity (4th Ed.), Sec. 1303; Finlay v. Finlay, 240 N. Y. 429; Ex parte Badger, 286 Mo. 139, 226 S. W. 936, 14 A. L. R. 286; Power v. Power, 65 N. J. Eq. 93; 31 C. J. 990-993; 46 C. J. 1249. In the case of In re Spence, supra, the court said:

"I have no doubt about the jurisdiction. The cases in which this court interferes on behalf of infants, are not confined to those in which there is property. Courts of law interfere by habeas for the protection of the person of anybody who is suggested to be improperly detained. This court interferes for the protection of infants, qua infants by virtue of the prerogative which belongs to the crown as parens patriae, and the exercise of which is delegated to the great seal."

In Story on Equity Jurisprudence (14th Ed.), Sections 1757-58, it is said:

"The jurisdiction of the court of chancery extends to the case of the person of the infant so far as is necessary for his protection and education. * * * As between husband and wife, the custody of the children generally belongs to the husband. * * * If the infant be a daughter and of very tender years, and the mother under all the circumstances be the most suitable to take care of her person and education, a court of chancery will confer the custody on the mother."

In the case of Power v. Power, 65 N. J. Eq. 93, the vice-chancellor held that an application to a court of equity is the more suitable remedy in cases like that at bar. He stated:

"We have both concluded, after examining the authorities in England, that the original jurisdiction of the court of chancery over the custody of infants was not based on the presence of the infant in court by the use of the writ of habeas corpus; that it was not based on that at all, but on an application to the court, not by the English bill and subpoena, but by the petition to the chancellor as parens patriae in a summary manner to determine the custody of the infant between the parents or other persons, claiming them, and that a writ of habeas corpus was entirely out of place in such a practice. The writ is, strictly speaking, applicable only to the case of actual confinement or physical restraint exercised by some public officer and the like. I do not say it may not be useful in some cases of infants, but it is not necessary to the jurisdiction of the court over infants that they should be present in court."

In Green v. Green, (Tex. Civ. App.) 146 S. W. 567, the court stated:

"Appellant before the court contends that the district judge was without power to grant an order controlling the custody of a minor child except in a divorce suit or in a habeas corpus proceeding brought for that purpose, and as the petition in this case is insufficient as a petition for divorce, and also fails to contain the requisites of a habeas corpus petition, that the district judge wrongfully entered the order appealed from (granting custody of the children). * * * While the

case of Legate v. Legate, 87 Tex. 248 * * * clearly holds that a habeas corpus proceeding can be resorted to as a means of testing the right of custody of a minor child, we think that neither of said cases nor any other that we have found hold that a habeas corpus proceeding or valid divorce proceeding are the only ones in which the right of custody of a minor child can be adjudicated. We think the case of ex parte Reeves, 100 Tex. 617, 103 S. W. 478, ample authority for the proposition that a pleading which shows upon its face that the welfare of a minor child requires that an order be made by a district court or judge thereof, is amply sufficient to warrant the court or such judge in making such order as in his discretion may appear right and proper for the welfare of the child."

In Blackburn v. Moore, 206 Ala. 335, 89 So. 745, a petition relating to the custody of a child was construed as a petition in equity, notwithstanding the fact that it was in the form of a petition for a writ of habeas corpus. It is said in 31 C. J. 993:

"The proceedings may be by habeas corpus, or in divorce proceedings, but such proceedings are not the only ones in which the right to the custody may be adjudicated. Any pleading which shows upon its face that the welfare of an infant requires that an order be made in regard to the custody is sufficient."

See further Pomeroy, supra, Sec. 1305. In Woodruff v. Conley, 50 Ala. 304, it was said that "any matter affecting a child may become a subject of chancery jurisdiction; and it is immaterial whether it is brought to the attention of the court by bill, petition or application for the writ of habeas corpus. The relief desired generally indicates the form of the application, which will be varied by the court to suit the circumstances developed." We can see no serious objection why a court, in the exercise of this equitable power, may not fix the custody of the children, even though the actual custody is already with the petitioner. See Hoskins v. Hoskins, 28 Ky. L. 435, 89 S. W. 478. In fact that may be as

necessary for the welfare of the children, as it may be necessary in other cases to *change* the custody. In view of the fact that section 35-121, supra, specifically provides that the court has power to grant support for children, when the parents are living separate and apart, it is not necessary to determine whether the equitable power in connection with the custody of children carries with it the incidental power to make provision for their support, although it may be pointed out that when section 35-121, supra, was first enacted (Sess. Laws 1882, c. 40, Sec. 18), the statute directed that the petition for support should be filed in the equity side of the court.

In Warner v. Warner, (D. C.) 24 F. (2d) 609, and Mollring v. Mollring, 184 Ia. 464, 167 N. W. 524, 527, it was held that the custody of the child could be given to a cross-petitioner, though a divorce was denied to the petitioner. In the Iowa case the court said in part:

"But though the function of the district court, while entertaining a divorce suit, is thus limited, it does not follow that the *court* had no inherent power to deal with the custody of infants. The district court has the powers of the chancery courts. The chancery court has original jurisdiction over the custody of infants as parens patriae. See Power v. Power, 65 N. J. Eq. 93 (55 Atl. at 111, 114). And it was held in Cowls v. Cowls, 3 Gilman (Ill.) 435, that such statute as we have confers no new authority or jurisdiction upon the chancery court. Where the question is the right to the permanent custody of children, the chancellor may, by virtue of his inherent jurisdiction, as public guardian of infants, fix their status in habeas corpus proceeding. Buckley v. Perrine, 54 N. J. Eq. 285 (34 Atl. 1054). So, then, though the divorce court has no power to settle custody, if all there is is a dismissed petition for divorce, it is still true that the district court of Iowa has other functions than determining divorce suits, and, as a district court, has inherent power to fix the permanent custody of infants. * * *

The question is not what the divorce court may or

may not do, but how the challenge to jurisdiction now being made shall be dealt with, in view of the fact that the district court of Iowa is not merely a divorce court, but one that, on some side of the court, has ample power to say which of these parties was the fitter to have the custody of this child at this time. We think the dispute is quite controlled in In re Receivership of Magner, 173 Iowa 299. We can perceive no good reason why these suitors, who were contending before the district judge over which one was the future custodian of this child, should be denied a hearing on their evidence and be driven away, when they could go before the same judge again, make the same issue,—say, on habeas corpus—put in again their evidence, and be entitled to the very decision the same judge has just declined to make. We will not interfere merely because the court did not indulge in the useless thing of declaring that it would not pass upon a matter on which all the testimony the parties had, had been submitted, in order that, when reapproached by the parties, the same judge, having the same question to settle, might then retake the same proof, and then entertain the controversy."

The court of the District of Columbia and of Iowa both hold, however, that if there is no cross-petition, but the petition of divorce is denied, the court is without jurisdiction to determine the custody and care of the children. We see no reason, however, why it may not be determined upon the issue tendered by a petition and an answer, unless it is merely an incident in the divorce case in the sense that it is of minor importance which falls with the main action—a question which we shall discuss presently.

In the case of Horton v. Horton, 75 Ark. 91, 86 S. W. 824, 5 Ann. Cas. 91, the petition for divorce also asked the custody and support of the children. There was no cross-petition. The divorce was denied, but custody of the children was granted to plaintiff, and an order for the support of the children was made. The court asked: "Can a chancery court, when it denies a divorce,

award custody of the children of the parties to the suit?" The question was answered in the affirmative, and the court stated in part:

"A learned writer on the subject of marriage and divorce points out that in those states holding that custody of children cannot be awarded, under the divorce statute, when the divorce is denied, the order could be made in habeas corpus proceedings; and that there is no reason why it should not be made in the divorce case when all the parties are before it, instead of remitting the parties to the other remedy. Nelson on Marriage and Divorce, §979. This reasoning commends itself to the court. While it looks beyond the authority of the chancery court in divorce suits where no divorce is granted to award the custody of the children, yet it cannot be questioned that the chancellor of that court is invested with full power to award custody of minor children for their best interests on habeas corpus proceedings. It seems idle to turn parties out of court and invite them into the chancellor's chambers for the same relief sought in court. There is no separation of the family here brought about by the court in making this order. The court merely recognized and found the facts existing, and then made an order for the well-being of the children, preserving the right of each parent to alternate custody and at all times to visitation."

The case has been cited with approval in a number of other cases; for instance, in Mollring v. Mollring, supra; Jacobs v. Jacobs, infra; Ex parte Badger, 286 Mo. 139, 226 S. W. 936. In the case of Morrill v. Morrill, 83 Conn. 479, it is stated that the court in an action for divorce has power to make any order relating to the care, custody or education of the children which is not forbidden by some controlling principle of law. In the case of Knoll v. Knoll, 114 La. 703, it appears that the plaintiff, husband, asked for a separation from bed and board and the custody of the children. The separation was denied, and the custody of the children was given to the defendant. It was held

that in view of the fact that the interests of the children required it, the plaintiff should be awarded their custody. In Madson v. Humane Society, supra, involving the custody of children, this court stated and applied the well known rule that when a court of equity acquires jurisdiction of the subject matter it can retain jurisdiction for all purposes in any way connected with the subject of the litigation. A divorce had been denied to both parties upon the evidence presented, but the case was continued to give an opportunity to present further evidence. In the meantime an order for the custody of the children was made. In ex parte Sangster, 295 Mo. 49, 244 S. W. 920, it is held that an order for custody of children may be made, though a divorce has been denied, but while a motion for a new trial is pending. It is true that in both of these cases, the order for custody was temporary in its nature. But that is more or less true in connection with any award of custody, and the cases show, we think, the thinness of the thread of reasoning upon which the cases from New York, and other like cases, depend.

Our district courts are, under the constitution (Sec. 10, Article 5) courts of superior and general jurisdiction. In this state, with its system of Code pleading, these courts administer all law—the common law, statutory law, and principles of equity, and all in the same suit. These branches of the law are of equal dignity; the rules thereof, if in fact in force, are on a parity, although the facts may require resort to one or the other, or others, of these branches. It is sufficient, in order that the court may act, that power exists under any of these rules, and that the pleadings and the facts warrant the exercise of power in a particular case. It may well be said that we have but one system of law, consisting of the common law, in so far as applicable, statute-law, and principles of equity. That is the objective field from which the court picks out those

particular principles which are applicable in the particular case before it. The court reaches out into this broad field of law, and picks out the appropriate principles which fit the pleadings and the facts, whether such principles are found in one statute or another, or in the common law or among the rules of equity. Novosel v. Sun Life Assurance Company, 49 Wyo. 422, 431-432, 55 P. (2d) 302 and cases cited. Numberless times it has been held that under the system of Code pleading, rules of law and equity may be administered in the same action. 1 American Jurisprudence 446; Am. Dig. System, under "Action 25(3)." Hence power granted under Sec. 35-121, supra, and power granted under the rules of equity, may be exercised in the same action. It is said in Maitland on Equity, page 20, that "the day will come when lawyers will cease to inquire whether a given rule be a rule of equity or a rule of the common law." While this statement is, perhaps, overdrawn, it shows that the eminent author recognizes the fact that we have but one system of law, into whatever branches we may, for convenience, choose to divide it. It is true that it is held that if a special power is conferred upon the court by statute in cases in which it did not previously have jurisdiction under the common or the equitable law, the power must be exercised as prescribed. 15 C. J. 815. But the mere fact that a statute authorizes the exercise of a power in such statutory proceeding cannot, unless there is a specific provision to the contrary, be considered as a general limitation upon the exercise of such power which is granted in another statute or under principles of equity—that is to say that the power cannot be exercised except only in the statutory proceeding and under the limitations prescribed therefor. Thus it is said that "statutes are not to be understood as effecting any change in the common law beyond that which is clearly indicated either by express terms or by necessary im-

plication from the language used." 69 C. J. 1040. Remedial statutes are presumed to provide remedies in addition to those which existed at common law and equity, unless a clear intent is expressed to make the statutory remedy exclusive. Rosin v. Mfg. Co., 89 App. Div. 245, 86 N. Y. S. 49. Hence the grant of power under our section 35-117, supra, to provide for the custody and care of children in connection with a decree granting a divorce, does not abrogate the equitable powers of the court existing independent thereof, nor does it limit the exercise of the power granted in another statute under somewhat different circumstances. Perhaps the statement in 15 C. J. 815 may seem inconsistent herewith. There it is stated that "if authority is given by legislative act in a particular case, the court will not deviate from the letter thereof. It cannot confound its original jurisdiction and its jurisdiction conferred by special act," etc. The text is taken from Williamson v. Berry, 8 How. 495, and must be understood in the light of that case. The court in that case had jurisdiction only under a special legislative act, and no equitable or common law power in connection with it.

A case specifically in point, and illustrating what we have said, is Ex Parte Saul, 31 Cal. App. 385, 160 Pac. 695. A divorce action was brought. The defendant also asked for a divorce. It was refused to both parties. Notwithstanding that the court awarded the custody of the children. Section 136 of the Civil Code of California provided that "though judgment of divorce is denied, the court may, in an action for divorce, provide for the maintenance by the husband of the wife and children of the marriage or any of them." It may be noted that this section made no provision for awarding the custody of children. Nor did any other section connected with the divorce laws. But the court reached out into the field of law, and upheld the action of the

trial court under another statutory provision which was in no way connected with divorce laws. In Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, it appears that the court refused a divorce, but made orders of custody and support in connection with the children of the parties. There was no statute specifically providing that this might be done. But the order was upheld, the court holding that this might be done under a statute relating to separate maintenance. While that statute is somewhat broader than our Sec. 35-121 supra, the principle involved is the same. In the case of Marshall v. Marshall, 236 Mass. 248, 128 N. E. 27, the plaintiff brought an action for separate maintenance under Sec. 33, c. 153, R. L. That section also provided that in that action the court might award the custody of children and make provision for their support. The petition filed in the case prayed for separate maintenance and also for the custody and support of the children. The plaintiff failed to make out a case for separate maintenance, but the court made provision for the custody and support of the children. This was done because section 37 of the statute made provision for such case when the parents were living apart. It was contended that an award under section 37, when the action was brought under section 33, would deprive the defendant of rights without due process of law. The court overruled the contention, stating among other things, after pointing out Sec. 37 supra, that "if for any reason relief were denied to the wife, the judge, if he deemed it expedient, could under the express wording of the petition make provision for the care, custody and support of their minor child, and having determined the fundamental fact of separation the decree which followed was not in excess of the jurisdiction of the court." The same principle was applied in Horton v. Horton, supra, where the court, in surveying the field of law, took from it a rule of equity instead of a statute.

Hence, since equity takes cognizance of the custody of children, and since Section 35-121, supra, gives power to award support for children, it is clear that power to act herein existed under the law, and that the trial court had jurisdiction of the subject matter herein. It also had jurisdiction of the parties. The only question remaining, accordingly, is whether it had jurisdiction to render the particular judgment, and that depends in this case entirely upon whether or not we can say that the procedural rules in connection with bringing the defendant before the court, and in connection with the petition and the hearing in this case, were not in accordance with the orderly administration of justice, securing to the defendant fair, full and complete opportunity to be heard and present his case. We do not think that we can say that. Sec. 35-121 of our statute, which gives power to the court to award support for children, provides, it is true, a summary method by application and notice of five days. But in this case the defendant had more than five days' notice. We cannot hold that notice of a longer time makes the proceeding invalid. Nor can we see that the defendant has a right to complain because a regular suit was brought, in which summons was issued. People v. Sisson, 153 Misc. 434, 275 N. Y. S. 299. That method gave the defendant a better opportunity to be heard than in a summary application, with simple notice, and hence he cannot have been prejudiced. Plaintiff in her petition asked not only for a divorce; she also asked the custody and support of the child. When the petition was dismissed as to the divorce, so that no divorce action was then pending, why could the petition not be considered as still pending as to the remaining matters? Denial of part of the relief sought does not necessarily carry with it denial of all relief. As stated in 33 C. J. 1145, "judgment for less relief than demanded may be given when sustained by the pleadings and proof." In Cray

v. Cray, 32 N. J. Eq. 25, it was held that though a petition was dismissed as to a divorce, it might, nevertheless, be sustained as a petition for separate maintenance, which was also asked therein. In Marshall v. Marshall, supra, the court, as we have seen, held that when a petition prays for separate maintenance and for the support and custody of children, it may be construed as a petition for the latter relief only, when it is dismissed as to the prayer for separate maintenance. In the case of Power v. Power, 65 N. J. Eq. 93, 97, 55 Atl. 111, Vice-Chancellor Pitney, subsequently a member of the Supreme Court of the United States, stated:

"I said at the hearing, and I am still of the opinion, notwithstanding what has been argued with so much power * * * that it was competent for this court, in the wife's suit, to have awarded to her the custody of that child * * * and refused her the decree of divorce. I see no incongruity whatever between the two results in such a case, where a husband and wife are living separately, for one of them to sue the other for divorce and also for the custody of the children, and to fail to get the divorce and to recover the children in that petition."

It is true that the courts in New York and other states do not agree with this reasoning. That is based on the theory that the prayer for the custody of the child and its support is purely incidental in a divorce case, in the sense that it is a minor matter, and that when the petition for divorce is dismissed, the dismissal takes the minor matter with it, so that there is nothing more to consider, leaving the case, under that theory, in the situation in which no petition or application is pending any longer. We think, however, that such holding goes too far, and would in many cases have as its basis a mere assumption rather than reality. In innumerable cases there would be no contest in a divorce action, were it not on account of the question

of custody and support of the children. In many cases the latter question is in reality the main and primary question in the case, and when that is true it may well be said that the question of divorce is the incidental and minor point involved therein. We think, accordingly, that whether the point of custody or support is merely incidental is a question of fact. It may and it may not be. Whether it is or not would seem to depend on one or both of two factors, namely, (1) the scope of the pleadings, and (2) the trial. If the pleadings are sufficient to sustain the judgment—as they should be: see 33 C. J. 1139 and 34 C. J. 153—and the parties have litigated the points, then no good reason is perceived why they should be turned out of court merely to commence another proceeding, and thus relitigate the matter. As was said in Willis v. Willis, 48 Wyo. 403, 421, 49 P. (2d) 670. "Parties to an extent at least may voluntarily enlarge the relevant issues. Freeman, supra (on Judgments, 5th Ed.), Sec. 675. It is not necessary, in the absolute sense, to determine the title in an action of ejectment, but this may be done. Hoover v. King, 43 Ore. 281, 72 Pac. 880. The extent of the interest of various defendants in premises involved in a foreclosure suit need not necessarily be determined, but it may be" (citing cases). So in this case it was not essential to determine the custody and support of the child in the divorce action (Busley v. Busley, 115 Kans. 725, 224 Pac. 922; 19 C. J. 342), but if the matter was voluntarily litigated, there is no particular reason in compelling the parties to resort to another proceeding now.

We shall turn, then, to the facts in this case. We need not determine whether or not the petition in itself, as filed, is sufficient to show that the award of custody, and for the support of the child, is for the best interests of the child, and that the proceeding is not merely one between the parents. If it is insufficient

it may in a number of respects be regarded as amended, in view of the fact that all the testimony was admitted without objection, and some matters, in fact, were brought out by the defendant himself. Washburn-Bettis Co. v. Surety Co., 38 Wyo. 530, 534, 269 Pac. 27, and cases cited. We find, then, the following situation: The parties were married. The father was forced into the marriage. They are living separate and apart, so as to come within the specific provisions of Section 35-121, supra. The child is a girl, born in 1936. The moral character and fitness of the mother is not in any way questioned, so that it clearly appears that she is the proper party, and that the father is not the proper party, to have the custody of the child. 46 C. J. 1240. The father was, in 1936, 19 years of age, and able to make some money. The mother was 17 years of age; she is living with her parents, wants to get a job and work, and presumably is not earning any money so as to support the child. The father denied in his answer that he is the father of the child. He denied his parenthood in his testimony. The point was expressly litigated, and the court found against the defendant on that issue. The denial of such parenthood not alone shows that defendant should not be awarded the custody of the child, but it inferentially shows that he does not want it. The denial of parenthood included the denial of the duty to support the child, so that it may well be said that the question of the duty of such support was fully litigated between the parties. Moreover, when the trial court announced that it believed it had the power to make the orders here complained of, it asked for argument on the point, and counsel argued it. Defendant did not ask to be permitted to introduce any further testimony, and presumably had none in addition to that already offered. Under the foregoing circumstances the trial court had, we think, power to make the orders complained of herein. We think it

would be wholly useless to compel the plaintiff to bring an independent proceeding under Section 35-121, supra. That would merely entail further trouble and expense, and would, probably, result in greater burden to defendant. The attorney's fees awarded herein may, in view of the small amount thereof, be considered as incidental to the support of the child. See 46 C. J. 1275; Brown v. Brown, 22 Wyo. 92, 135 Pac. 801. We may add, that the facts disclosed herein show an unfortunate situation. Plaintiff has not given herself a fair chance to determine whether or not she can live with her husband. We can but hope and trust that there may be a speedy reconciliation. And to that end we think that the order made herein should be amended in one respect, namely, to give the defendant, notwithstanding his attitude herein, an opportunity to see the child at all reasonable times. He may come to love her, which is to be hoped.

It is accordingly ordered that the trial court modify the judgment herein as above mentioned, and that, as so modified, it stand affirmed.

*Modified and Affirmed.*

RINER and KIMBALL, JJ., concur.