# IN RE LAMBERT ET AL.
## LAMBERT v. PLACE

(No. 2040; June 24, 1938; 80 Pac. (2d) 425)

For the plaintiff in error, there was a brief and oral argument by *William B. Cobb* of Casper, Wyoming.

For the defendant in error, there was a brief and oral argument by *William C. Holland* of Buffalo.

244

RINER, Justice.

This case brings here for review by proceedings in error the propriety of an order of the district court of Johnson County awarding the custody of two minor children, aged about seven and three years respectively at the time the cause was heard, to the State Board of Charities and Reform of this State. The course of events in the court named antecedent to the final disposition of the matter aforesaid is as follows:

On August 14, 1935, Mrs. Emma Place, now the defendant in error, filed in said district court her verified petition setting forth in substance that Emma Jacqueline Lambert, born in Colorado February 19, 1930, and Joyce Janith White, also born in that State May 3, 1934, were at the time of the filing of said petition in the care and custody of their mother, Marie Lambert, now the plaintiff in error, residing near Buffalo, Wyoming, in Johnson County, Wyoming; that the petitioner is the grandmother of these children; that the children have no suitable place of abode and are surrounded by vicious, corrupt and immoral influences; that petitioner is able to provide a good and moral

home for these children, and, therefore, desires to be appointed their guardian and awarded their custody; that if this can not be done that the court appoint as guardian of and award the custody of said minors to some association actively engaged in securing homes for destitute children; that it is essential to the health, safety and welfare of said minor children that their custody be awarded to some suitable guardian. August 20, 1935, upon an order made by the Court Commissioner, the sheriff of Johnson County was directed to take possession of the children and retain them subject to the orders of the court, and this was shortly thereafter done.

Subsequently, upon due notice to the parties interested, the matter was heard by the district court aforesaid, the Honorable James H. Burgess presiding, and on November 26, 1935, an order was made removing the children from the custody of their mother and committing them to the "guardianship, care and custody of the said Emma Place, the petitioner herein, until further order" of the court.

The children remained in the care of Mrs. Place until about December 24, 1935, at which time their mother advised Judge Burgess that if she were allowed to have their custody returned to her she would leave the home where she was then living, take the children to the State of Colorado and go with them herself; whereupon the children were again placed in her care.

On September 8, 1936, another verified petition was filed by Mrs. Place. It set forth the facts relative to the previous award of custody of said children and their return to their mother upon her representation to the court that she would provide a suitable home for them; that the children were on the date last above given in the care of their mother, who was then living on a ranch near Buffalo, Wyoming; that petitioner fears for the welfare and safety of the children; that

it "is essential to the health, safety and welfare of said minor children that they be taken from the custody of their mother and awarded to some suitable guardian, and your petitioner respectfully requests that she be given consideration in making said award as being the person best suited to care for said children."

The day the petition last above described was filed, the district judge issued another order directing the sheriff aforesaid to once more take possession of the children and to hold them subject to the court's direction. This order was obeyed the following day, September 9, 1936.

The matter was heard October 9, 1936, before the Honorable Harry P. Ilsley, Judge of the District Court of the Sixth Judicial District, sitting instead of Judge Burgess. The mother, Marie Lambert, appeared with counsel, and the County and Prosecuting Attorney of Johnson County appeared in behalf of Mrs. Place and the State of Wyoming. Evidence was submitted by both parties. Thereafter, by an order filed October 19, 1936, the court found "that said minor children have no suitable place of abode and that they are surrounded by vicious, corrupt and immoral influences and that they should be taken from the care and custody of their mother, the said Marie Lambert."

It was accordingly decreed that "the said Emma Jacqueline Lambert and Joyce Janith White be and they hereby are committed to the guardianship of the State Board of Charities and Reform of the State of Wyoming until further order of this Court, provided that said Board shall not allow said children to be adopted until a further hearing before this Court in order that the said Marie Lambert, mother of said children, may have an opportunity to improve her situation and establish herself under such conditions that she may prove to the satisfaction of the Court that she can and will provide a suitable home and place

of abode for said children." It was also ordered that the former order assigning the temporary custody of these children to the grandmother, Emma Place, should be vacated and that Judge Ilsley should still retain jurisdiction over the matter.

It is for the purpose of determining whether the order thus made was proper that these proceedings in error were instituted.

It is assigned as error on behalf of Marie Lambert, the mother of the children, that the order entered as aforesaid is contrary to law and unsupported by sufficient evidence.

The contention is made for the plaintiff in error that the court was without jurisdiction to award the custody of these children until compliance with the provisions of Chapter 50, Laws of Wyoming, 1933, had been had. The first section of that Chapter reads verbatim:

"It shall be the duty of the court or of the Judge of any of the District Courts of Wyoming, whenever any proceedings for the guardianship of a minor child are instituted and pending in any of the District Courts of the State of Wyoming, to defer, except in cases of emergency, the entering of any order appointing the State Board of Charities and Reform of the State of Wyoming as guardian of the child or children involved in any such guardianship proceedings, until fifteen days notice shall have been given to the said State Board of Charities and Reform; and thereupon to enter an order continuing such hearing and requiring the Clerk of the District Court to give at least fifteen days notice in writing by registered letter, addressed to the State Board of Charities and Reform at the Capitol, Cheyenne, Wyoming."

Section 2 of the Chapter directs the Clerk to give the notice provided for in the preceding section, and Section 3, in substance, accords the State Board of Charities and Reform the privilege to present evidence concerning "the welfare of the child or children" in-

volved, and authorizes the court to make such order of guardianship "as shall be determined by the court."

We think the contention not well founded.

In LaCourse v. McLellan & DeGraw (1929) 3 Dom. L. Rep. 73, the court very well said:

"It has been said by authority that no rule can be laid down for determining whether a command in a statute is to be considered as a mere direction or instruction involving no invalidating consequence in its disregard, or is imperative, with an implied nullification for disobedience, except the fundamental one that it depends upon the scope and object of the enactment. Maxwell on Interpretation of Statutes, 6th ed., p. 649; Liverpool Borough Bk. v. Turner (1860), 2 De G. F. & J. 502, at p. 507, 43 E. R. 715.

"In statutes imposing a public duty, and requiring that the duty shall be performed in a certain manner and in a certain time, such prescriptions are frequently construed as merely directory, as especially when injustice or inconvenience to others would result if the requirements set out were regarded as imperative. (Maxwell on Interpretation of Statutes, pp. 650 and 659.)"

In Becker v. Lebanon, etc., St. Ry. Co., 188 Pa. 484, 41 Atl. 612, the court in construing a statute remarked:

"The word 'shall' when used by the legislature to a court is usually a grant of authority and means 'may,' and even if it be intended to be mandatory it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power."

To the same effect is Fagan v. Robbins, 96 Fla. 91, 117 So. 863.

Another rule to be borne in mind in the interpretation of statutes as concerns their directory or mandatory character is that referred to by the Supreme Court of Missouri in State ex inf., etc., v. Bird, 295 Mo. 344, 244 S. W. 938:

"If a statute merely requires certain things to be

done and nowhere prescribes the result that shall follow if such things are not done, then the statute should be held to be directory. The rule thus stated is in harmony with that other well-recognized canon that statutes directing the mode of proceedings by public officers are to be held to be directory and are not to be regarded as essential to the validity of a proceeding unless it be so declared by the law. (State v. Cook, 14 Barb. 259.)"

The same rule was thereafter announced in Hudgins v. Mooresville Consolidated School District et al., 312 Mo. 1, 278 S. W. 769; Wenger v. Wenger, (Minn.), 274 N. W. 517. Where a statute read:

"All District Judges of the District Courts within the State of Wyoming, are hereby required to serve or cause to be served upon the respective parties or their attorneys of record, a copy of all orders and judgments signed by them, whether said orders are signed within or without their respective districts,"

In State v. Genero, 39 Wyo. 325, 271 Pac. 17, this court said: "The statute says nothing about the effect of a failure to comply with it, and there may be good reasons for holding that it ought to be construed as merely directory."

It may be observed that Chapter 50 in its provisions above given nowhere prescribes the results which shall follow if its provisions are not carried out, and situations resulting in serious injustices, to say nothing of inconvenience, to parties in guardianship proceedings readily suggest themselves to the thoughtful lawyer if such a statute should be held mandatory and proceedings of that character declared absolutely void unless compliance with the law be had. The intention of the law-making body to be gathered from the terms of the statute in the light of the objects and purposes intended to be accomplished is always the controlling factor in the construction of legislative acts. We do not think it was the intention of the Legislature of this

State that the Act in question should be regarded as mandatory and jurisdictional in character.

Of course, in the case at bar, the State Board of Charities and Reform promptly accepted the children whose guardianship was thus awarded to it, has apparently made not the slightest objection to what was done, and evidently was quite satisfied with the action taken by the district court. Under such circumstances we fail to see why the plaintiff in error should be entitled to complain. If other persons conduct the necessary investigation and supply evidence in a case of this kind, and the State Board of Charities and Reform acquiesces in their doing so as being satisfactory to it, it would appear needless for the ground to be retraversed, as it would have to be if the order were reversed for the purpose of requiring the trial court to implicitly follow the exact terms of the statute.

It is urged that the evidence is insufficient to support the order made. We are unable to see that this is so. All parties herein recognize that the controlling question in matters of this sort is—"What is for the best interests and welfare of the children?"

We have carefully examined the record before us, and without undertaking to detail the evidence therein, a procedure which would merely amplify the serious character of the charges made against the mother of these children, we shall be content with saying that there was testimony presented from which the district court was authorized to conclude that the proprietor of the house where the mother was staying with these children and by whom she was hired to serve as housekeeper possessed an immoral reputation in the community in which he lived; that he had been twice divorced; that he was then living in immoral relationship with the children's mother; that his treatment of the children was hardly to be regarded as conducive to

their best interests and welfare; that the health of the children suffered severely while living under such conditions; that they were ill-fed, ill-clothed and unkempt while they were retained by their mother at this place; that after promising the district judge who first handled the matter that she would take the children out of such harmful circumstances and take care of them, the mother deliberately broke the promise and returned to the situation in which they were originally found.

It is true that in some respects the testimony was conflicting, but that fact merely brings into operation the familiar rule of appellate procedure, that where the evidence is conflicting and is of substantial character to support the trial court's action this court will not interfere. This has been said so many times from this bench that citation of previous decisions is wholly unnecessary. The judge who tried this matter saw and heard the witnesses who gave their testimony, and was, as we have so often remarked, in far better position than we are to weigh that testimony and reach a correct conclusion.

We have not overlooked, but have kept constantly before us, the rule that only very exceptional circumstances will justify the removal of children of tender years from a mother's care. We think that the trial court could, as was done, find that those exceptional circumstances prevailed in the matter submitted. Two experienced and able judges of the district courts of this state have reached practically the same conclusion regarding the status of these children. From our examination of the record, we are wholly unable to see that they were so seriously mistaken as to authorize this court to reverse the order attacked. Indeed, it may be observed that the order as it now stands affords the mother every opportunity to regain possession of her offspring by improving her situation and demonstrat-

ing to the court that she can and will take proper care of them under conditions conducive to their best interests and welfare.

The questioned order of the district court of Johnson County will accordingly be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.