Rockingham
No. 7591

JOHN E. FRENCH

v.

RITA M. FRENCH

September 30, 1977

*Casassa, Mulherrin & Ryan* and *Peter J. Saari,* of Hampton (*Mr. Saari* by brief), for the plaintiff.

Rita M. French, pro se, filed no brief.

PER CURIAM. Petition to compel performance of a divorce decree and petition to modify divorce decree by the plaintiff. The defendant filed an answer and cross petition for modification and a motion to bring forward and correct the original court decree.

There was a hearing before the court, which entered a decree on December 30, 1975. The plaintiff's objections to portions of the decree were denied on January 21, 1976. The defendant filed a motion to partially set aside and modify the decree. On January 26, 1976, the court modified its December 30, 1975 decree and the plaintiff excepted. Transferred by *Douglas,* J.

The plaintiff argues first that provisions of a 1973 stipulation between the parties, which amended an earlier decree of May 31, 1972, and which were approved by the court, were in the nature of a property settlement and cannot be amended. *Douglas v. Douglas,* 109 N.H. 41, 242 A.2d 78 (1968). We do not accept this argument. In *Lund v. Lund,* 96 N.H. 283, 74 A.2d 557 (1950), cited by the plaintiff, the court said that the decree "is to be considered in its entirety," *Id.* at 285, but this bore only on the question whether children were involved within the meaning of R.L. 339:16, now RSA 458:19, relating to the three-year limitation of orders for support where no children were involved. This case is no authority for the proposition urged by the plaintiff that the settle-

ment between the parties as incorporated in the decree of November 7, 1973, was a property settlement which could not be modified. This decree had special provisions as to real and other property rights distinct from provisions as to payments for the support of the defendant and her minor children. With the trial court's interpretation of these support provisions as being subject to modification under our settled law, we are content. *Hogan v. Lebel*, 95 N.H. 95, 58 A.2d 321 (1948). *See also Kalman v. Hutcheson*, 111 N.H. 36, 40, 276 A.2d 260, 263 (1971).

A further position taken by the plaintiff, that the court abused its discretion by modifying the decree despite the "inequitable" conduct of the defendant and despite her not having "touched" the principal of the bonds transferred to her, does not require extended consideration.

Without detailing all the evidence, it is sufficient to say that the court could have found the following facts: There was no inequitable conduct on the part of the wife which required that she be denied relief. She is in poor health, which probably will grow worse, so that she is unable to work steadily at any of the reasonably well-paid positions. Her earnings of about $2,000 annually, under present economic conditions, are meager. She is forced to live well below the standard which she enjoyed prior to the divorce and which is an important factor in considering what she should now receive. *Calderwood v. Calderwood*, 114 N.H. 651, 327 A.2d 704 (1974). She has three of the parties' six children living with her: David, Dennis and Stephen, the latter a minor who has serious health problems which demand expenditures. The house is in poor repair as is her automobile, which she needs for transportation to her work. She is trying to help put David and Dennis through college. The fact that she has not "touched" the principal amount of $22,000 worth of bonds, which is urged by the plaintiff as strong evidence that she is well able to make ends meet, we find unimpressive. Her needs are as obvious as the plaintiff's ability to pay, which is also in issue here. *Economides v. Economides*, 116 N.H. 191, 357 A.2d 871 (1976). *See also Madsen v. Madsen*, 109 N.H. 457, 255 A.2d 604 (1969).

In contrast to her situation is that of the plaintiff, whose salary is approximately $50,000 per year, with provisions for automatic yearly increases. He has no children by his present wife, he has $125,000 life insurance which will go to her upon his death, and other benefits. He will receive for the remainder of his life, upon

his retirement at age 60, in some three–four years, around $2,000 monthly. He is now living on as high if not a higher scale than before the divorce.

■ The plaintiff's reliance upon *Calderwood v. Calderwood,* 114 N.H. 651, 653, 327 A.2d 704, 706 (1974), as holding that evidence of the plaintiff's financial condition was wrongly admitted by the court is misplaced. There were no children in the *Calderwood* case and, as the court expressly noted, the husband's ability to pay was not in issue, as he had assured the court that he could and would pay any order made. *Id.* at 653, 327 A.2d at 706. The opinion did, however, note that the wife was entitled to be maintained at the economic level she enjoyed during her marriage "with due consideration as to the economic situation. . . ." *Id.* at 652, 327 A.2d at 706. In the light of all the circumstances which the court had the duty to consider, we find no abuse of discretion. *Healey v. Healey,* 117 N.H. 618, 376 A.2d 140 (1977).

■■ The plaintiff's final contention is that the court had no jurisdiction to award educational expenses for adults. We believe that the court did have jurisdiction and did not abuse it. When the order was made on December 30, 1975, requiring the plaintiff to pay up to $3,000 per year to allow the three children, David, Dennis and Stephen, to complete their undergraduate college education, only Stephen, as previously noted, was a minor. There is no clear-cut decision in this state on the precise question before us. However, there is here substantial authority which supports the underlying thrust of the defendant's position. We note that in RSA 458:17 (Supp. 1975), providing for the custody, support and education of children, the word "minor" does not appear. Because as a matter of law jurisdiction to award custody is limited to jurisdiction over minors, there would seem to be no reason why "minor" should be inserted in statutory language regarding such custody; but because jurisdiction to award education expenses is not limited as a matter of law to jurisdiction over minors, if the legislature had intended that there be such a limitation, it could easily have said so.

In the case of *Payette v. Payette,* 85 N.H. 297, 157 A. 531 (1931), which has never been overruled or questioned, the court held that although the son, in that case a minor, was self-supporting, it was no abuse of discretion to order the father to help finance the young man's education. The opinion states that "the

question is a relative one to be determined from all the facts and circumstances of the case." *Id.* at 298, 157 A. at 532. It approves of the principle laid down in *Esteb v. Esteb,* 138 Wash. 174, 182, 244 P. 264, 267 (1926), that the court should not " 'be restricted to the station of the minor in society, but should, in determining this fact, take into consideration the progress of society, and the attendant requirements upon the citizens of today.' " *Id.* at 298, 157 A. at 532. Although there is some authority to the contrary, it is now generally held that courts may make allowance for college education of children who have reached adulthood. W. Nelson, Divorce § 14.85, at 122 (2d ed. 1945). This majority accords with our philosophy as noted in *Payette.*

In *Lund v. Lund,* 96 N.H. 283, 74 A.2d 557 (1950), the opinion cites the *Payette* case approvingly as standing for the proposition that there is no time limit on the duration of orders "for the education of children. . . ." *Id.* at 284, 74 A.2d at 559. It notes that there was no time limit even on orders affecting alimony payments until the passage of Laws 1973, ch. 154, now RSA 458:19, providing that where no children were involved, or the children had reached maturity, an alimony·order would not be in force after the expiration of three years unless the wife showed the need of continuing support. It then goes on to hold that, while in these circumstances the effect of the statute is to bring up such orders for reconsideration every three years, " 'the power of the court to make such orders as may be deemed just *is in no way limited.*' " *Id.* at 285, 74 A.2d at 559 (emphasis added). In *Madsen v. Madsen,* 109 N.H. 457, 255 A.2d 604 (1969), the opinion states that the modification of an order "is to be measured in the terms of the needs of the parties and their respective abilities to meet them." *Id.* at 459, 255 A.2d at 605.

We believe we need not labor the point that today, with rare exceptions, a college education is indispensable for success in obtaining and holding a reasonably well-paid and secure position. Another result of present conditions is that, again with rare exceptions, no one's education is completed at age eighteen, nor in practically all professions, until well after twenty-one. In the case before us, the children's welfare and the likelihood that they will soon have to assist in supporting their ailing mother demand that they be afforded what was once a luxury but has now become a **necessity.**

As previously stated, with a salary of approximately $50,000 which in all probability will increase, no children by his present wife, and liberal retirement benefits when he reaches age 60, the plaintiff has the ability to pay the $3,000 yearly maximum figure ordered by the court for the undergraduate college education of the children, and the $3,000 figure is set well within the reasonable limits.

In summary, we find no abuse of the court's discretion and no errors in the record. The order is

*Decree affirmed.*