**Peter E. KAMP, Appellant (Defendant),**

v.

**Marguerite E. KAMP, Appellee (Plaintiff).**

**No. 5514.**

Supreme Court of Wyoming.

Jan. 28, 1982.

Catherine L. Dirck of MacPherson, Golden, Brown & Dirck and S. K. Briggs, Rawlins, for appellant.

Robert B. Keiter and Michael Blonigen, Legal Intern, Laramie, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

This appeal presents an issue of first impression for this court, the resolution of which will substantially affect domestic relations law in Wyoming. The question presented is:

Did the district court, acting under § 20–2–113(a), W.S.1977,[1] have the power

1. Section 20–2–113, W.S.1977, reads in pertinent part:

"(a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. The court shall consider the relative competency of both parents and no award of custody shall be made solely on the basis of gender of the parent. On the peti-

to order continued support for appellant's disabled daughter, even though the child had attained the age of majority?

We will affirm.

## FACTS

In 1958, Marlana Kamp was born to appellee Marguerite Kamp and appellant Peter Kamp. From birth, Marlana has suffered from severe mental deficiencies, cerebral palsy, and spastic paraplegia. The Kamps were divorced in August of 1960, and custody of Marlana was awarded to Marguerite who has continued to care for her daughter. They are presently living in the home of Marguerite's mother in Kenyon, Rhode Island. The parties agree that Marlana is severely incapacitated and that caring for her is expensive. The love, care and attention that Marlana requires is a minute-by-minute obligation—one that Marguerite Kamp discharges with devotion and abiding affection.

Peter Kamp resides in Carbon County, Wyoming, and is a man of means. From the date of the divorce until the present dispute Mr. Kamp has provided support for his daughter as ordered by the court. Support payments were originally set at $100.00 per month, but this amount had been increased until, on November 1, 1976, the obligation was increased to $300.00 per month.

On August 24, 1978, Marguerite petitioned the district court to raise the monthly child support payments to $850.00 a month. In response, Mr. Kamp challenged the court's jurisdiction to require further support, on the ground that Marlana had attained the age of majority,[2] and that § 20–2–113, supra, gives to the courts of this state jurisdiction over minor children only. The district court heard testimony on October 27, 1980 and February 18, 1981, then on April 8, 1981 ordered Mr. Kamp to pay $850.00 per month for Marlana's support. Mr. Kamp takes his appeal from this decision.

## Does § 20–2–113(a), W.S.1977, Impose a Duty On Appellant to Support Marlana?

The issue structured by the appellant must be divided into two areas of inquiry. The first asks whether the parent has a duty to support an incapacitated child once the child has reached the age of majority; the second has to do with whether the district court possesses jurisdiction which will permit ordering the parent to furnish support for an incapacitated child under § 20–2–113(a), supra.

In essence, this appeal asks this court to construe the legislative intent reflected in the language of § 20–2–113(a), supra. (See n.1 for language.)

Mr. Kamp argues that the legislature intended the word "children" in § 20–2–113(a) to mean "minor children" only. In support of this position, he refers us to an annotation which says that, as a general proposition, courts are without authority to award support for adult incapacitated children under their state divorce statute jurisdiction. See Annot. 152 A.L.R. 1084 and cases cited therein. Kamp also urges a position which holds that, at common law, the duty of parental support for a child ends when the child reaches majority. In support of this theory, he cites two opinions of this court, namely, *Wantulok v. Wantulok*, 67 Wyo. 22, 214 P.2d 477, 483–484 (1950) and *Worth v. Worth*, 48 Wyo. 441, 49 P.2d 649, 660 (1935). See also: Annot., 162 A.L.R. 1084. In reliance upon this authority, the appellant concludes that the legislature must have intended that the term "children" as used in § 20–2–113(a) contemplates "minor children" only.

The two Wyoming cases cited above are not dispositive of the issue here because we were not there concerned with a statutory interpretation where the question was

tion of either of the parents, the court may revise the decree concerning the care, custody and maintenance of the children as the circumstances of the parents and the benefit of the children requires."

2. The age of majority in Wyoming is 19 years pursuant to § 14–1–101, W.S.1977.

whether the statute included or excluded an *incapacitated* adult child nor are we here involved with a common-law duty-of-support question. We are, on the other hand, asked in the case at bar to ascertain the meaning, intent and purpose of a statute.

In pursuit of this task, we look to the general rules of statutory construction in order to ascertain the legislature's intent when it referred to "children" in § 20–2–113(a). In interpreting a statute, where the plain and ordinary meaning of the words are not clear, we are bound by what we perceive to be the legislative intent. Of course, if this intent is expressed clearly and unambiguously through the language of the statute, the apparent intent must be given effect. *Oroz v. Hayes*, Wyo., 598 P.2d 432 (1979); *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977). When the statute is ambiguous, the intent of the legislature must be ascertained from its terms in light of the objects and purposes intended to be accomplished. *School District Nos. 2, 3, 6, 9, and 10, Campbell County v. Cook*, Wyo., 424 P.2d 751, 756 (1967); *Hoffmeister v. McIntosh*, Wyo., 361 P.2d 678, 679 (1961); *In re Lambert*, 53 Wyo. 241, 80 P.2d 425, 428 (1938). Finally, we have said that if a statute has in view an object of great public importance it is entitled to a liberal construction in order, if possible, to carry out the legislative purpose. *Woolley v. State Highway Commission*, Wyo., 387 P.2d 667 (1963), citing *Edwards v. City of Cheyenne*, 19 Wyo. 110, 114 P. 677, 687 (1911).

Applying these rules to § 20–2–113(a) we come unerringly to the conclusion that the legislature, in utilizing the word "children", meant *all children* and not just "minor children." "Children" is not a technical term, nor is it peculiar to the law. Rather, the word has always connoted all offspring, American Heritage Dictionary (1978), at p. 233, and not just those offspring who have not yet reached majority. Other courts have adopted a similar interpretation. In construing the Colorado support statute in *Wilkinson v. Wilkinson*, 41 Colo.App. 364, 585 P.2d 599 (1978), the Colorado Supreme Court concluded that if it

had been the legislature's intent that the term "children" was to mean "minor children," it could easily have included the word "minor" in the statute. Even though, in holding that there was a duty to support the couple's retarded adult son, the court in *Wilkinson* attached significance to the fact that the legislature had deleted a reference to "minor children" appearing in an earlier support statute, we feel that the reasoning of that case is still applicable. *Wilkinson*, supra, 585 P.2d at 600. Likewise, in *Dehm v. Dehm*, Utah, 545 P.2d 525, 528 (1976) the Utah Supreme Court gave the term "children," in a statute similar to ours, its plain and ordinary meaning where the legislature had neither limited nor defined it. Similarly, in *French v. French*, 117 N.H. 696, 378 A.2d 1127 (1977) the New Hampshire Supreme Court supported its affirmation of a trial-court award which provided for the payment of education expenses for a divorced father's children, who had attained majority, by relying on the fact that the legislature had not limited support awards to minors only. Once again the court observed that if the legislature had intended such a limitation it would have said so. *French*, supra, 378 A.2d at 1129. Finally, in *Young v. Young*, Tex., 609 S.W.2d 758 (1980) the Texas Supreme Court refused to hold that the word "children" meant "minor children," when construing a property-division statute. The court noted that the word "minor" and the word "child" were not always synonymous, and that if the legislature had desired to modify the word "children" with the term "minor" it could have done so. *Young*, supra, 609 S.W.2d at 760.

We find the analysis of the above-cited cases to be persuasive and consistent with the intent and purpose of the legislative enactment with which we are concerned in this appeal. We therefore hold that the Wyoming legislature, in utilizing the term "children" in § 20–2–113(a), intended to impose a duty on parents to support their "children" when the need for support is apparent. The language is not ambiguous, nor has the legislature chosen to limit it,

and we are not called upon to inquire any further than the language of the section itself. *Geraud v. Schrader*, Wyo., 531 P.2d 872 (1975).

■ In further support of our conclusion, we note that in only one instance has the legislature chosen to limit the effect of the divorce statutes to minor children. See: § 20–2–112(b), W.S.1977. On all other occasions the term is not modified by the word "minor." The appellant would have us hold that this singular reference to minor children reflects that all legislative references to "children" were intended to mean "minor children." We cannot agree with this position. It is a well-accepted principle of statutory construction that in ascertaining the meaning and purpose of a statute, we should look at all statutes which relate to the same subject or which have the same general purpose. *Stringer v. Board of County Commissioners of Big Horn County*, Wyo., 347 P.2d 197, 200 (1959). To apply this rule in the manner appellant desires would be to ignore the clear intent of the legislature. When the legislature used "minor children" in § 20–2–112(b) it had a purpose in mind, but we cannot conclude that its purpose was to change to "minor children" the references to "children" in all of the other sections of the divorce statutes.[3]

■ Thus, our only remaining consideration has to do with whether the child in this case falls within the category of "children" with respect to whom the legislature intended the divorced parent would be called upon to support. The facts of this case clearly show that Marlana Kamp is such a child. As was said in *Wells v. Wells*, 227 N.C. 614, 618, 44 S.E.2d 31, 34 (1947):

> "The obligation to support such a child ceases only when the necessity for the support ceases."

We hold that the legislature intended such an application in enacting § 20–2–113(a), supra.

## JURISDICTION TO ORDER SUPPORT

On numerous occasions this court has held that the provisions of § 20–2–113(a), supra, n.1, grant a district court continuing jurisdiction, at any time, to modify a decree respecting custody or the payment of support money—the paramount consideration always being the best interests and welfare of the children. *Rose v. Rose*, Wyo., 576 P.2d 458 (1978); *Strahan v. Strahan*, Wyo., 400 P.2d 542 (1965). The legislature has provided this because parents' obligation to support their children is a continuing one. *Redman v. Redman*, Wyo., 521 P.2d 584 (1974).

In the case at bar, the district court was properly acting under its authority, pursuant to § 20–2–113(a), supra, when it ordered an increase in the support payments for the incapacitated daughter Marlana. According to this section, the court had continuing jurisdiction to modify the November, 1976 decree, and such power will continue until the necessity for the support of Marlana ceases or other changes in circumstances become apparent.

We hold that § 20–2–113(a), W.S.1977, grants the district court jurisdiction to provide for support of the children of divorced parents when the need for support is necessary. Such power is conferred upon the court notwithstanding the age of the child. The keystone consideration is the need for support, and, as always, the ability to pay. We are not, however, in this case, required to determine in what situations the parental duty of support will cease. We simply say that here there was a duty to support and the court had the power to enforce it.

Affirmed.

ROONEY, Justice, specially concurring, with whom RAPER, Justice, joins.

I concur in the result reached by the majority opinion, but I do not agree that such result can be reached properly by finding a legislative intent to restrict the meaning of the word "children" in § 20–2–

3. The divorce statutes are embodied in §§ 20– 2–101 through 20–2–117, W.S.1977.

113(a), W.S.1977[1] to only that of relationship with respect to parentage. The statutory use of the word "children" could create an ambiguity because of its varied meanings.

" * * * Although the word [child] may import minority, infancy, the early years of life, there are uses of the term where age has nothing whatever to do with the meaning involved, and according to the correct use of language they have more meanings than one; two meanings well understood are: (1) That of relationship with respect of parentage. (2) That of minority. * * * " (Bracketed word added.) 14 C.J.S. Child p. 1106.

But my disagreement with the majority is not so much with the reasoning process by which the meaning of "children" in the statute is designated, as it is with the broad result which follows therefrom—a broad result which I find to be beyond the intent of the legislature.

In finding that the word "children" in the statute means only the relationship with respect to parentage, the majority opinion imposes a duty on parents to support their children, regardless of age, "when the need for support is apparent" or when it is "necessary." Such need may result from other than incapacity, and it may arise many years after the child has reached the age of majority. And with this meaning given to the use of the word "children," such broad application cannot be avoided. Said another way, if the duty is to support those children resulting from parentage without restriction as to age or other emancipation, the broad application cannot be avoided.

Additionally, a condition would be imposed which is often the subject of legislation but which our legislature has not seen fit to enact. For example, a South Dakota statute provides:

1. Section 20-2-113(a) provides:
   "In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. The court shall consider the relative competency of both parents and no

"It is the duty of the father, the mother, and the children, of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. * * * " Section 25-7-6, SDCL (1976).

Forty-five other states have similar provisions. Wyoming does not. We are not here dealing with indigence, but the majority opinion creates a duty of indigence beyond one of incapacity.

DUTY TO SUPPORT

With reference to incapacity, I prefer to simply refer to a well recognized, but not universally recognized, exception to the general proposition that there is no obligation on the part of a parent to support an adult child, which exception continues the parental obligation to support "where the child is of weak body or mind." Annotation: Parent's obligation to support adult child, 1 A.L.R.2d 910, § 5; see 59 Am.Jur.2d Parent and Child, § 103, referring to cases with language such as:

" 'Generally, the obligation of a parent to support a child ceases when the child reaches majority, but an exception arises when the child is, from physical or mental deficiencies, unable to support himself.' " *Fincham v. Levin*, Fla.App., 155 So.2d 883, 884 (1963), quoting from *Perla v. Perla*, Fla., 58 So.2d 689 (1952).

"It is true, as respondent suggests, that generally at common law a parent's obligation to support his child ends when the latter becomes of age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for the support ceases. Courts throughout the land have so held emphatically and eloquently. This case

award of custody shall be made solely on the basis of gender of the parent. On the petition of either of the parents, the court may revise the decree concerning the care, custody and maintenance of the children as the circumstances of the parents and the benefit of the children requires."

plainly falls within this exception to the general rule." *Davis v. Davis*, 246 Iowa 262, 67 N.W.2d 566, 568 (1954).

Appellant refers to the following quotations in *Wantulok v. Wantulok*, 67 Wyo. 22, 214 P.2d 477, 21 A.L.R.2d 572 (1950) as authority for placing Wyoming in a position contrary to making an exception to the general rule in favor of an incapacitated child. (The case concerned a question as to whether or not a trust should be imposed upon certain property. An issue was presented relative to the liability for a debt resulting from sickness and death of an adult daughter):

> " * * * It is said in 46 C.J. 1269: 'In the absence of statute, a parent *ordinarily* is under no legal obligation to support an adult child; but the legal liability for the support of the child ceases when it reaches the age of majority.' * * * " (Emphasis added.) 214 P.2d at 483.

In referring to such quotation, appellant overlooks two things: (1) the word *"ordinarily"* in the quotation, and (2) the balance of the quotation taken from 46 C.J. Parent and Child, p. 1269. The quotation continues:

> " * * * unless the child elects to remain the servant of its father, under his roof, and receive support from him, or *unless it is in such a feeble and dependent condition physically or mentally as to be unable to support itself*; * * * " (Emphasis added.)

I do not read into § 20–2–113(a), W.S. 1977 [2] an intention of the legislature to change this law. The entire rationale for imposing support on a parent for a *minor* child is that the child usually cannot be on its own and fend for itself in the business and social world because it has not yet attained full physical and mental ability to do so. When such physical and mental ability has not yet been obtained even upon reaching the age of majority, the rationale for automatic emancipation at that age does not exist. When it does not exist, the result coming therefrom cannot be. The child simply is not emancipated. It still has need for care, custody and maintenance. The duty and responsibility for parental support remains. The question of whether or not the child is so physically and mentally incapacitated as to preclude emancipation at age nineteen is one of fact.

Historically, the obligation for child support has ceased when the child is emancipated. Emancipation can result under various circumstances, such as the child's marriage, his entry into the armed forces, and upon his reaching the age of majority (19 years of age since 1973, see § 14–1–101, W.S.1977, infra). But an exception exists when the triggering event is the reaching of the age of majority, i.e., emancipation will not result upon the child's reaching the age of majority if the child is then unable to care for or maintain himself because of physical or mental deficiencies. In such case, the parental duty to support remains until such physical or mental deficiency no longer prevents the child from caring for and maintaining himself.

The language of § 20–2–113(a), W.S. 1977 [3] does not conflict with this determination. It does not say that emancipation occurs in any specific fashion. It provides that the disposition shall be "as appears most expedient and beneficial for the well being" of the child, and that the "care, custody and maintenance" of the child shall be "as the circumstances of the parents and the benefit of the children" require. The intent for support to cease when the necessity for it ceases is evident. When a child enters the armed services or when he gets married, the cessation of necessity occurs. Emancipation results. The obligation of parental support ceases. The time at which age of the child attaches a responsibility or privilege to him and removes such from the parent varies with the nature of the specific responsibility or privilege. Following are some examples:

> "If the minor is under the age of *fourteen* (14) years, the court or judge may

---

**2.** See footnote 1.

**3.** See footnote 1 for full text of § 20–2–113(a), W.S.1977.

**54**

nominate and appoint his guardian. If he is *fourteen* (14) years of age or older he may nominate his own guardian, * * *." (Emphasis added). Section 3–2–102, W.S. 1977 (part of the Article pertaining to Guardian and Ward).[4]

"Whoever takes, leads, carries, decoys, or entices away a child under the age of *twelve* (12) years, with intent unlawfully to detain or conceal such child from its parents, guardian, or other person having the lawful charge or custody thereof; * * * [commits a crime]." (Emphasis and bracketed material added.) Section 6–4–202, W.S.1977.

"When any parent, living apart from the other parent who by express agreement or court order has the physical custody or control of a child under the age of *fourteen* (14) years, takes, leads, carries, decoys or entices away the child * * * [commits a crime]." (Emphasis and bracketed material added.) Section 6–4–203, W.S. 1977.

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits [the crime of] sexual assault in the second degree if, under circumstances not constituted sexual assault in the first degree:

* * * * * *

"(v) At the time of the commission of the act the victim is less than *twelve* (12) years of age and the actor is at least *four* (4) years older than the victim;" (Emphasis and bracketed material added.) Section 6–4–303(a)(v), W.S. 1977.

"An actor who is at least *four* (4) years older than the victim and who inflicts sexual penetration or sexual intrusion on a victim under the age of *sixteen* (16) years is guilty of [the crime of] sexual assault in the fourth degree." (Emphasis and bracketed material added.) Section 6–4–305, W.S.1977.

"* * * * if any brother or sister, being of the age of *sixteen* (16) years or upwards, shall have sexual intercourse together * * * he or she shall be deemed guilty of incest * * *." (Emphasis added.) Section 6–5–102, W.S.1977.

"(a) Every person who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic liquor or malt beverage to any person under the age of *nineteen* (19), * * * is guilty of a misdemeanor.

"(b) Any person under the age of *nineteen* (19) who has any alcoholic or malt beverage in his possession * * * is guilty of a misdemeanor. * * *" (Emphasis added.) Section 12–6–101, W.S.1977.

"(a) Any property owner is entitled to recover damages from the parents of any minor under the age of *seventeen* (17) years and over the age of *ten* (10) years who maliciously and willfully damages or destroys his property. * * *" (Emphasis added.) Section 14–2–203, W.S.1977.

"(a) Any person legally responsible for the support of a child under the age of *eighteen* (18) years who abandons, deserts, neglects or unjustifiably fails to support the child is liable for support of the child. * * *" (Emphasis added.) Section 14–2–204, W.S.1977.

"Anyone who solicits, procures or knowingly encourages anyone under the age of *sixteen* (16) years to engage in illicit sexual penetration or sexual intrusion * * * is guilty of a felony * * *." (Emphasis added.) Section 14–3–104, W.S.1977.

"(a) At the time of marriage the parties shall be at least *sixteen* (16) years of age except as otherwise provided." (Emphasis added.) Section 20–1–102(a), W.S. 1977.

"(a) * * * [A]ny parent who without just cause or lawful excuse deserts, or fails or refuses to provide adequately for the

---

**4.** Sections 1–3–114 and 3–2–101, W.S.1977, are of interest in reflecting the concept of affinity between physical and mental deficiency and minority. Section 1–3–114 tolls the statute of limitations for a person who is "a minor or subject to any other legal disability." Section

3–2–101 authorizes appointment of a guardian "when it appears necessary" for "the persons and estates, or either of them, of minors, incompetents or insane persons, who have no legally appointed guardian."

care, support and maintenance of his child or children under the age of *eighteen* (18) years, is guilty of a crime * * *." (Emphasis added.) Section 20–3–101(a), W.S.1977.

"(a) A person may register to vote not less than thirty (30) days before an election, or at a primary election, who satisfies the following qualifications:

* * * * * *

"(ii) He will be at least *eighteen* (18) years of age on the day of the next election." (Emphasis added.) Section 22–3–102(a)(ii), W.S.1977.

"(a) As used in this act * * * [requiring payment of minimum wage to employees]:

* * * * * *

"(iv) 'Employee' includes any individual employed by an employer but shall not include:

* * * * * *

"(F) All minors under *eighteen* (18) years of age * * *." (Emphasis and bracketed material added.) Section 27–4–201, W.S.1977.

"It shall be unlawful for any person, firm or corporation to employ, permit or suffer any child under the age of *sixteen* (16) years to work at any gainful occupation except farm and domestic service, * * * [unless the child has a work permit, which permit will not be issued in any event for employment in extra hazardous occupations]." (Emphasis and bracketed material added.) Section 27–6–107, W.S.1977.

Notwithstanding the provisions of §§ 14–2–204(a) and 20–3–101(a), supra, in divorce decrees, as already noted, the time at which a parent is normally relieved of the duty to support his children is nineteen, the age fixed by § 14–1–101, W.S.1977, Cum.Supp. 1981:

"(a) Upon becoming nineteen (19) years of age, an individual reaches the age of majority and as an adult acquires all rights and responsibilities granted or imposed by statute *or common law*, except as otherwise provided by law.

"(b) A minor may consent to health care treatment to the same extent as if he were an adult when:

"(i) The minor is or was legally married;

"(ii) The minor is in the active military service of the United States;

"(iii) The parents or guardian of the minor cannot with reasonable diligence be located and the minor's need for health care treatment is sufficiently urgent to require immediate attention; or

"(iv) The minor is living apart from his parents or guardian and is managing his own affairs regardless of his source of income.

"(c) The consent given pursuant to W.S. 14–1–101(b) is not subject to disaffirmance because of minority." (Emphasis added.)

Reading this section, as we must, in harmony with common law and other statutes and decisions of the court, *Civic Ass'n of Wyoming v. Railway Motor Fuels*, 57 Wyo. 213, 116 P.2d 236 (1941); *Matter of Adoption of Voss*, Wyo., 550 P.2d 481 (1976); *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977); *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295 (1979), and in light of the purpose to be accomplished, *School Districts Nos. 2, 3, 6, 9, and 10, Campbell County v. Cook*, Wyo., 424 P.2d 751 (1967); *Hoffmeister v. McIntosh*, Wyo., 361 P.2d 678 (1961), emancipation occurs when the child reaches the age of nineteen years unless the child is then unable to care for or maintain himself because of physical or mental deficiencies, in which event the emancipation occurs at the time he becomes able to care for and maintain himself.

The foregoing is also dispositive of the question as to whether or not the district court has jurisdiction to make such decree.

" * * * By and large, however, the great majority of cases in this country hold that in a divorce action the father may be required to support an adult child who is incapable, from physical or mental disability, of supporting himself. There is

some authority to the contrary, but it is rare, mostly outdated, and contrary to enlightened views on the responsibilities of parents." Clark on Domestic Relations, § 15.1, p. 495.

See *Urbach v. Urbach*, 52 Wyo. 207, 73 P.2d 953, 113 A.L.R. 889 (1937) (statutory grant of power is not limitation on court's independent equitable powers), and *McBride v. Lomheim*, 82 S.D. 263, 144 N.W.2d 564 (1966) (parent's liability to support substantially handicapped daughter may be enforced in divorce action).

My affirmance is for the reasons indicated.