Vivian L. DOWLING, Appellant,

v.

James K. DOWLING, Appellee.

No. 6454.

Supreme Court of Alaska.

March 30, 1984.

---

William T. Ford, Anchorage, for appellant.

John W. Sivertsen, Jr., Richard D. Pennington, Aglietti & Pennington, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Chief Justice.

·James and Vivian Dowling were divorced in Anchorage on September 24, 1974. The divorce decree incorporated the parties' property settlement and child custody agreement. The agreement provided that Vivian Dowling receive custody of the four minor children, and that James Dowling pay child support. In the event of the coming of age, marriage, death, or emancipation of a child, the child support payments would be reduced pro rata.

In 1977, the Alaska Legislature changed the age of majority from nineteen years of age to eighteen. AS 25.20.010. As a result of this amendment, James Dowling, on June 5, 1981, filed a motion for declaratory relief in which he requested the superior court to rule that his obligation to pay child support terminates when each child is "emancipated" by reaching the statutory age of majority, eighteen years. Valerie Dowling, the second eldest Dowling child, had just turned eighteen. Vivian Dowling opposed the motion, but it was granted by the superior court.

On September 1, 1981, Vivian Dowling filed a motion for modification of child support. The motion, opposed by James Dowling, requested the superior court to order James Dowling to pay post-majority educational support should any child decide to attend college as a full time student. The superior court denied her motion. Vivian Dowling appeals the superior court's rulings on both motions.

We first review the superior court's ruling on James Dowling's motion. The child support agreement provided that James Dowling would pay child support "until the

children have reached the age of nineteen, marries, becomes deceased, or otherwise emancipated." Whether the change in the statutory age of majority had any effect on the child support agreement depends upon the meaning of the phrase "otherwise emancipated" contained in the agreement. Vivian Dowling contends that it is apparent from the agreement itself [1] that the phrase only means an emancipation "in fact," *i.e.*, a cessation of dependency, and does not include an emancipation "by law."

■ The definition of the word "emancipate" is: "to release from paternal care and responsibility and make *sui juris* ... to free from restraint, control, or the power of another." Webster's New Collegiate Dictionary 370 (1973). "Emancipation" is defined as "[t]he act by which one who was unfree, or under the power and control of another, is rendered free, or set at liberty and made his own master." Black's Law Dictionary 613 (4th ed. 1968). Thus, we believe that the meaning of the phrase "otherwise emancipated" includes an emancipation "by law," such as the attainment of the statutory age of majority.[2]

However, Vivian Dowling also contends that AS 01.10.100(a), the Alaska general savings clause provision, prevents the amended age of majority statute from having any effect on a pre-existing child support decree. AS 01.10.100(a) provides:

The repeal or amendment of any law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

The phrase "right accruing or accrued" has been construed to mean a vested right. *Alaska Public Utilities Commission v. Chugach Electric Association, Inc.*, 580 P.2d 687, 692 (Alaska 1978); *Bidwell v. Scheele*, 355 P.2d 584, 586 (Alaska 1960).

■ The term "vested" means "fixed; accrued; settled; absolute." Black's Law Dictionary 1734 (4th ed. 1968). Since a child support order is modifiable after judgment upon a showing of substantial change in circumstances,[3] a child's right to future, unaccrued installments of child support is not a vested right.[4] Thus, AS 01.10.100(a) does not prevent the amendment of the age of majority statute from altering the legal effect of the language contained in the pre-existing child support order. The superior court's grant of James Dowling's motion is affirmed.

We next review the superior court's denial of Vivian Dowling's motion. The issue is whether a court has the power to modify a child support order so as to provide for post-majority educational support.

■ A motion to modify a child support order is made pursuant to AS 25.24.170, formerly AS 09.55.220,[5] which provides in part:

[A]ny time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide ... for the

---

**1.** Vivian Dowling has not contended that the trial court should have considered extrinsic evidence concerning the intent of the parties, or that the trial court should not have interpreted the agreement as a matter of law.

**2.** AS 25.20.010, the age of majority statute, provides:

A person is considered to have arrived at majority at the age of 18 years, and thereafter has control of his own actions and business and has all the rights and is subject to all the liabilities of citizens of full age, except as otherwise provided by statute.

**3.** *Curley v. Curley*, 588 P.2d 289, 291 (Alaska 1979).

**4.** This reasoning has been followed in other jurisdictions. *See Sillman v. Sillman*, 168 Conn. 144, 358 A.2d 150, 153 (1975); *Norris v. Norris*, 93 Nev. 65, 560 P.2d 149, 150 (1977); *State v. Kiessenback*, 167 Or. 25, 114 P.2d 147, 150 (1941).

**5.** Several of the statutory provisions cited in this opinion were renumbered in 1983. Hereinafter, the current designation is shown in brackets. Thus, for example, former AS 09.55.210 is cited as "AS 09.55.210 [AS 25.24.160]."

care and custody of the *minor* children or for their nurture and education.... (Emphasis added). An order may be modified notwithstanding the fact that it was based on a separation agreement or stipulation signed by the parties. *Curley v. Curley*, 588 P.2d 289, 291–92 (Alaska 1979).

In *Hinchey v. Hinchey*, 625 P.2d 297, 300 (Alaska 1981), this court held that AS 09.55.210 [AS 25.24.160],[6] which empowers a court to issue the initial child support order, allows a court to provide for post-majority educational support. The court explained its holding as follows:

It is of particular significance that the statute was not drafted to read "nurture and education of minor children" for then post-majority support would be clearly prohibited. Lacking such an express limitation, we think the term "children," in the context employed, is ambiguous and thus subject to judicial construction.

Other Alaska statutes pertaining to custody of children specify whether they are applicable to minor children. AS 09.55.205 [AS 25.24.150] provides, in part, that "[T]he court may ... make an order for the custody of or visitation with the minor child...." Similarly, AS 09.55.200 [AS 25.24.140] authorizes the court, during the pendency of the action, to enter orders "for the care, custody, and maintenance of the minor children of the marriage...." We conclude that a reasonable construction of AS 09.55.210 [AS 25.24.160] allows for the continuation of educational support of children beyond the age of majority.

This conclusion is supported by the decision in *French v. French*, 117 N.H. 696, 378 A.2d 1127 (1977). The New Hampshire court ordered the college fees paid for two children after they had reached the age of majority. The New Hampshire court reasoned that the word "minor" did not appear in the custody and support statute, and that the legislature would have included "minor" if it had intended to limit support to minor children.

*Hinchey*, 625 P.2d at 300 (footnotes omitted).

■ The *Hinchey* court did not consider other relevant statutes in determining the legislative intent behind AS 09.55.210 [AS 25.24.160]. First, as noted above, AS 09.55.220 [AS 25.24.170] authorizes a court to modify a child support order to provide "for the care of the *minor* children." (Emphasis added). Second, AS 11.51.120 states that a person is criminally liable if, "being a person legally charged with the support of a child under 18 years of age, he fails without lawful excuse to provide support for the child." Finally, a child of married parents has no legal right to post-majority educational support in Alaska. His only legal recourse to obtain post-majority aid is under AS 25.20.030, which provides that "[e]ach parent is bound to maintain his children when poor and unable to work to maintain themselves."

■ In light of these provisions, we are not convinced that the legislature intended to provide for post-majority educational support in either an original decree, or in a modification of the original decree. To the extent *Hinchey* is inconsistent with this conclusion, it is overruled. The superior court correctly denied Vivian Dowling's motion, and its judgment is AFFIRMED.[7]

MATTHEWS, Justice, with whom RABINOWITZ, Justice, joins, dissenting.

Today's opinion overrules the holding of *Hinchey v. Hinchey*, 625 P.2d 297 (Alaska 1981) that a court may order a divorced

---

**6.** AS 09.55.210 [AS 25.24.160] states in pertinent part that:

In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

....

(2) for the payment by either or both parties of an amount of money or goods, in gross or installments, as may be just and proper for

the parties to contribute toward the nurture and education of their children, ...

**7.** Of course, divorcing parents can still enter into an agreement to provide for the post-majority educational support of their children, and have the agreement made part of the judgment so that it will be enforceable.

parent to pay educational support to adult children for three reasons which are largely left to implication:

(1) Because AS 09.55.220, a statute not involved in *Hinchey*, authorizes modification of a child support order as to "minor children." The majority apparently believes that because of the language of § 220 courts, by negative implication, lack authority to modify a decree which provides support for adult children. Premised on this belief, the court evidently concludes that no decree providing support for adult children is permissible.

(2) Because AS 11.51.120 makes it a crime to fail to support minor, but not adult children.

(3) Because an adult child of married parents is not generally entitled to parental support, the court apparently believes that it follows that the legislature meant to bar a court in a divorce action from ordering post-majority educational support.

In my view all of these reasons are invalid.

### I.

Turning to the first reason for the majority's decision, I do not agree that AS 09.55.-220 can properly be read to impose, by means of a negative implication, a bar on the modification of a divorce decree which provides for post-majority child support. It has been well recognized that courts have the power to provide post-majority support for handicapped children. *See* H. Clark, Law of Domestic Relations § 15.1, at 495 (1968). *See also Wells v. Wells*, 227 N.C. 614, 44 S.E.2d 31 (1947); *Commonwealth ex rel. Groff v. Groff*, 173 Pa.Super. 535, 98 A.2d 449 (1953); *Van Tinker v. Van Tinker*, 38 Wash.2d 390, 229 P.2d 333 (1951). *See generally* Annot., 1 A.L.R.2d 910, 921

(1948). Likewise, it cannot be doubted that a separation agreement incorporated into a divorce decree in which one spouse has agreed to pay support for an adult child is enforceable.[1] H. Clark, *supra* § 15.1, at 495. To interpret AS 09.55.220 as prohibiting modification of a decree providing for support for an adult child under either of these circumstances would be ridiculous. If an adult child's need for support substantially decreases that should be a changed circumstance justifying modification of the support decree; AS 09.55.220 was plainly not intended to prohibit modification in such a circumstance.

Moreover, the power to grant a certain type of remedy carries with it, as a procedural matter, the power to modify the remedy in appropriate circumstances in the future. That is the meaning and function of Civil Rule 60(b).[2] *J.C. v. M.L.C.*, 668 P.2d 1351, 1352 (Alaska 1983). If § 220 were meant to eliminate this power it would be in conflict with Rule 60(b) and would be invalid under Art. IV, § 15 of the Constitution of Alaska.[3]

For these reasons, the majority's premise that § 220 prohibits modification of a decree which provides support for adult children is incorrect. It follows that the majority's implied conclusion that § 220 prohibits, by implication, decrees providing support for adult children is unfounded.

### II.

The second reason expressed by the majority in support of its conclusion that post-majority educational support may not be ordered is that AS 11.51.120 makes it a crime for a parent to fail to support minor, but not adult children. In my view there is no logical connection between this criminal statute and the issue of the power of the court to decree payment of support for

---

**1.** Indeed, the majority has recognized this in today's opinion. (Op. p. 483, note 7).

**2.** Civil Rule 60(b) governs modification of divorce decrees as to child custody and support issues. *See, e.g., Livingston v. Livingston*, 572 P.2d 79, 85–87 (Alaska 1977).

**3.** Art IV, § 15 provides:

The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by ⅔ vote of the members elected to each house.

adult children in a civil action. Merely because a party's failure to act in a certain way is not a crime does not cast any light on whether a civil court may order the party to so act. For example, as noted above, courts have the power to decree post-majority support for adult handicapped children. The legislature has not, however, made non-support of adult handicapped children a crime. It could not reasonably be inferred from this fact that the legislature has intended to preclude courts from ordering parents to support their handicapped adult children. Civil courts have ample power to enforce their decrees independent of the criminal law. Likewise, the crime of non-support of minors may be committed whether or not any civil decree exists.

### III.

I now address the third reason. It is true that non-divorced parents are ordinarily not required to pay support to their adult children. It does not follow from this fact that a legislature might not rationally permit an award for educational support for adult children in a divorce decree. The Washington Supreme Court has recently addressed this issue in *Childers v. Childers*, 89 Wash.2d 592, 575 P.2d 201 (1978):

> The fact that married parents *may* legally bid their children "a fiscal farewell" at age 18 when some divorced parents *may* be legally required to provide financial support when they are able but do not chose to do so, led the Court of Appeals to its conclusion. The fact that most married parents chose willingly to make financial sacrifices for their childrens' education, including college and regardless of age, seems to have been disregarded....
>
> In allowing for divorce, the state undertakes to protect its victims.... Quoting from R. Washburn, *Post-Majority Support: Oh Dad, Poor Dad*, 44 Temple L.Q. 319, 327, 329 (1971):
>
>> A number of courts adopt the policy that a child should not suffer because his parents are divorced. The child of di-

vorce parents should be in no worse position than a child from an unbroken home whose parents could be expected to supply a college education.

> ....

>> To terminate support when the parents are divorced creates a special disadvantage not shared by children whose parents remain together. If the father could have been expected to provide advanced education for his child, it is not unfair to expect him to do so after he has been divorced.

> That the divorced parent, especially non-custodial, will sometimes not willingly provide what he otherwise would have but for the divorce, we recognized long ago in *Esteb v. Esteb*, 138 Wash. 174, 184, 244 P. 264, 267, 246 P. 27 (1926):

>> .... Parents, when deprived of the custody of their children, very often refuse to do for such children what natural instinct would ordinarily prompt them to do....

> In the 1973 act, the legislature simply allows the court to secure for the children what they would have received from their parents except for the divorce, limited to that which is necessary for the children's and society's well-being and that which will not work an undue hardship on parents. Nothing more is expected of divorced parents than married parents, and nothing less.

> In all probability more married parents will be making sacrifices financially for their children 18 and up than will the divorced parents who, in the sound discretion of the trial court, will have a legally imposed duty to do so. Even if the legislation does create a classification, it rests upon a reasonable basis. It is based on considerations already mentioned, and the facts known to the legislature and this court as well as to the layman, of the disruptions to homelife, bitterness and emotional upset which attend most marital breaks. The irremediable disadvantages to children whose parents have divorced are great enough.

To minimize them, when possible, is certainly a legitimate governmental interest.
*Id.* at 207–208 (citations and footnotes omitted).

In conclusion, none of the three reasons alluded to by the majority for overruling *Hinchey* has merit. Thus, I continue to believe that the holding of *Hinchey* is correct for the reasons there expressed. I therefore conclude that the superior court had authority to decide appellant's motion seeking modification of the child support provisions of the decree. I would remand this case for consideration of the motion on its merits.