Rockingham
No. 88-491

PAUL W. KAYLE

v.

JUDITH KAYLE

November 16, 1989

*Mazerolle & Frasca P.A.*, of Nashua (*Stephen J. Frasca* on the brief and orally), for the plaintiff.

*Kelliher and Clougherty*, of Manchester (*Michael B. Clougherty* on the brief and orally), for the defendant.

SOUTER, J.  The plaintiff appeals an order of the Superior Court (*Pamela D. Eldredge*, Esq., Master; *McHugh*, J.) finding that changed circumstances justify modifying a 1979 divorce decree by increasing alimony and support and by holding the plaintiff largely responsible for future educational expenses of the parties' children. We affirm.

Prior to the divorce in 1979, and continuing through the time of the hearing on modification, the plaintiff was employed as a pilot by US Air. In the six years prior to the divorce he was repeatedly laid off or furloughed for substantial periods, causing financial hardships, and his income varied from $13,800 in 1973 to $35,100 in 1978. At the time of the divorce, the plaintiff was employed with a net monthly income of $2,300, while the defendant was unemployed with monthly expenses of $2,187, in consideration of which the court ordered the plaintiff to pay monthly alimony of $750 and monthly support of $325 for each of two minor children, whose custody was awarded to the defendant. Although the defendant thereafter became gainfully employed, earning nearly $20,000 in 1986, a subsequent illness with cancer required treatment and left her unable to work full-time at the date of the order on appeal.

In 1987, the defendant's reduced earning capacity and the elder child's plan to attend college prompted the instant petition to modify the 1979 decree. Hearing thereon was deferred until after defendant's treatment, by which time the child was a student at Middlebury College, the costs of which were paid by the defendant for the first year and by the plaintiff for the second. The plaintiff conceded that his net monthly income at the time of the hearing was $8,200 (before deducting depreciation on his commercial real estate), against which he claimed expenses of $6,200. The master found that the defendant's monthly expenses, for herself and the younger child remaining at home, then exceeded $3,000.

Subject to exceptions not here relevant, the court increased monthly alimony to $1,500, increased support for the child at home to $500, and ordered the plaintiff to pay all future post-secondary education expenses of the children, after deduction for any loans, grants, scholarships or other assistance. The order provided that if a child obtained no such assistance, fifteen percent of the plaintiff's contribution would be treated as a loan to the child subject to repayment from future earnings.

■ The plaintiff challenges the revised alimony and support orders on grounds of error in declining to reexamine the parties' marital standard of living to provide a touchstone for measuring the adequacy of any present alimony award, and in awarding sums so large as to amount to a general sharing of the plaintiff's current prosperity. It was not error, however, to bar litigation of the parties' marital standard of living. This is the standard for determining the ideal level of alimony, *French v. French*, 117 N.H. 696, 698, 378 A.2d 1127, 1128 (1977), where the circumstances of the parties make its attainment possible, and a determination of that standard should be made at the time of the original award. Unless there is reason to infer that the original support award did not purport to enable the recipient to maintain the marital standard, as would be the case when the obligor was justifiably incapable of contributing an adequate amount, this issue need not be relitigated when modification of an existing order is under consideration. Thus, the standard for modification, that financial capacities or the needs of the parties have changed substantially since the prior order, *see Fortuna v. Fortuna*, 103 N.H. 547, 549, 176 A.2d 708, 710 (1961), does not necessarily require new proof of the marital standard as a benchmark in setting the level of any revised award. The record gives no indication of extraordinary facts that would justify looking behind the original decree in this case.

■ Nor was there evidence to indicate that the provisions of the revised order exceeded what was reasonably necessary to maintain the defendant's standard of living, to the point of constituting an award simply of a share in the plaintiff's recent prosperity, contrary to *Calderwood v. Calderwood*, 114 N.H. 651, 653, 327 A.2d 704, 706 (1974). On the face of it, the revised order increased an award of monthly alimony and support totaling $1,400 for three people in 1979 to $2,000 for two people in 1988. Since inflation is obviously to be considered in assessing the continuing adequacy of any award, and since the defendant's illness has recently prevented her from contributing at the level reached in her healthier years, there is no plausible basis to argue that the revised order reflects an abuse of discretion that would justify reversal. *See Douglas v. Douglas*, 109 N.H. 41, 42, 242 A.2d 78, 79 (1968).

We likewise fail to perceive error in ordering the plaintiff to bear the costs of his children's post-secondary education for the 1988–89 and future academic years. The plaintiff concedes the court's jurisdiction to order payment of such expenses, *see* RSA 458:17, I (Supp. 1988); *French v. French, supra* at 699–700, 378 A.2d at 1128–29, but argues that his liability should be limited to the cost of education at

a State university in New Jersey, where the children live. *See Nebel v. Nebel*, 99 N.J. Super. 256, 264–65, 239 A.2d 266, 270, *aff'd*, 103 N.J. Super. 216, 247 A.2d 27 (1968). He finds the actual order particularly objectionable because he claims not to have been consulted in his elder daughter's choice of Middlebury.

Legally and factually, the argument is wanting. Since the plaintiff failed to request any such limitation on his liability, he cannot predicate error on the trial court's failure so to rule, *see Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983), and we have no occasion to consider the wisdom of adopting the standard he now wishes us to impose. *Cf. Economides v. Economides*, 116 N.H. 191, 193, 357 A.2d 871, 873 (1976) (mechanical decisional techniques generally rejected in domestic cases).

The standard for reviewing the education order is, then, the general standard of discretion reasonably exercised. *See Douglas v. Douglas*, 109 N.H. at 42, 242 A.2d at 179. The plaintiff has demonstrated no abuse. The record fails to indicate that the plaintiff was not consulted on the choice of Middlebury; while the master found that the defendant had not discussed it with him, the master was not asked to find that the daughter had failed to discuss the matter with the plaintiff and made no such finding. Nor was any finding made or requested about the expense differential between Middlebury and New Jersey's State colleges, although we will assume, *arguendo*, that there is a difference.

With respect to the daughter at Middlebury, the plaintiff has no obligation to reimburse the defendant for freshman year expenses, and his liability for at least the two final college years is subject to a right, as we understand the order, to require repayment of up to 15% of the total expenses not offset by student loans or other financial aid. As to the younger child, the plaintiff's obligation is subject to the same 15% mitigation, absent any further order. Since the children's mother is presently unable to sustain the burden she carried before her illness, placing this educational obligation on their father with a net income of $98,400 a year is no abuse of discretion.

*Affirmed.*

All concurred.